

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

August 14, 1990

Mr. Andrew Sansom
Executive Director
Texas Parks and Wildlife
    Department
4200 Smith School Road
Austin, Texas   78744

Opinion No.  JM-1206

Re:  Whether licensed commercial shrimpers must hold commercial finfish fisherman's licenses in order to sell finfish  (RQ-1852)

Dear Mr. Sansom:

Your predecessor requested the  opinion of this  office on an issue concerning the authority of commercial shrimpers to sell finfish[1] captured in the course of harvesting shrimp from the waters of this state.  You ask whether the  captain and each paid  member of the  crew of a  boat licensed as  a commercial shrimp boat are required  to hold both a  general commercial fisherman's  license  and  a  commercial  finfish fisherman's license in  order to sell  finfish species  that are otherwise lawful to  sell.  The staff  of the Parks  and Wildlife Department has answered the question in the  affirmative.

It is  well  established  that the  construction  of  a statute by  the agency  charged with  its administration  is entitled to great weight.  Ex  parte Roloff, 510 S.W.2d  913 (Tex. 1974).  This is especially true where the  administrative construction is contemporaneous, or nearly so, with the statute itself.  Burroughs  v. Lyles, 181  S.W.2d 570  (Tex. 1944).  The courts will not,  however, abide by an  administrative agency's  interpretation  that is  contrary  to  the clear meaning  of  an  unambiguous  statute.  Texas  Health Facilities Comm'n v. El Paso  Medical, 573 S.W.2d 291  (Tex. Civ. App. - Tyler 1978, writ ref'd n.r.e.); 2 Tex. Jur.  3d, Administrative Law § 7.

---

1.   "Finfish" are "those living natural resources  having either cartilaginous  or bony skeletons  (Chondrichthyes and Osteichthyes)."  Parks & Wild. Code § 47.001(14).

The captain and each paid member of the crew of a boat licensed as commercial shrimp boat under chapter 77 of the Parks and Wildlife Code must obtain a general commercial fisherman's license. Parks & Wild. Code § 77.040(b). A commercial fisherman is

> a person who catches edible aquatic products except oysters from the water of this state for pay or for the purpose of sale, barter, or exchange, or any other commercial purpose.

Id. § 47.001(1). The general commercial fisherman's license authorizes the licensee to engage in business as a commercial fisherman. See id. § 47.002(a).

In contrast, section 47.003(a) of the code provides, "No person may engage in business as a commercial finfish fisherman unless he has obtained a commercial finfish fisherman's license." A commercial finfish fisherman is "a person who catches only finfish from the tidal waters[2] of this state for pay or for the purpose of sale, barter, or exchange." Id. § 47.001(2) (emphasis and footnote added).

The department's position on this issue is based on its understanding of the nature and purpose of the commercial finfish fisherman's license. The license is thought to constitute a specialized and restricted entitlement to capture finfish species for commercial purposes. The restriction, we are told, was meant to protect a segment of the commercial fishing industry while at the same time promoting conservation of finfish species. In support of these claims, our attention is directed to public testimony offered in support of Senate Bill 302 of the 66th Legislative Session in 1979.

Senate Bill 302 would have added a new class of commercial fishing license -- the "tidal water commercial finfish fisherman's license" -- to the then existing tidal water commercial fisherman's license and nontidal water commercial fisherman's license. Bill File, S.B. 302, 66th Leg. (1979) (introduced version). It would also have changed the definition of "tidal water commercial fisherman" to mean, in relevant part, "a person who catches fish, other than finfish." The term "finfish" was limited in the bill

---

2. "'Tidal water' means all the salt water of this state, including that portion of the state's territorial water in the Gulf of Mexico within three marine leagues from shore." Id. § 47.001(7).

to eight particular species of fish.   The bill would have carved a special niche for holders of commercial finfish fisherman's licenses, in essence granting them the exclusive right to exploit the designated finfish species for commercial purposes.   See Public Hearing on S.B. 302 Before the Senate Comm. on Nat. Res., 66th Leg. (Feb. 7, 1979) (testimony of Senator Babe Schwartz) (tape available from Senate Staff Services).

The bill history prepared by the Legislative Reference Library shows that Senate Bill 302 was never reported out of the Senate Committee on Natural Resources.  The failure to report a bill from committee or inaction by the legislature on a particular bill does not conclusively establish legislative intent as to the subject matter of the bill. El Chico Corp. v. Poole, 732 S.W.2d 306, 314-15 (Tex. 1987). This rule, strictly speaking, means that the failure of the legislature to act on Senate Bill 302 is not indicative of its intent to reject the principles embodied in the bill. Such intent, however, is clearly evident from a comparison of the provisions of the bill with the sections of the Parks and Wildlife Code that occupy their place.

The plain language of the Parks and Wildlife Code does not support the dichotomy set out in Senate Bill 302. Because the captain and crew of a commercial shrimp boat are entitled by their licenses to engage in business as commercial fishermen, they are by definition not prohibited from catching, in addition to shrimp, edible aquatic products other than oysters.  The definitions of "commercial fisherman" and "commercial finfish fisherman" now in place were adopted during the same legislative session at which Senate Bill 302 was offered. Acts 1979, 66th Leg., ch. 260, at 550; Acts 1979, 66th Leg., ch. 623, at 1398.  These definitions clearly indicate that the legislature intended the latter occupation to constitute a subset of the former, at least where edible species of finfish are concerned. Neither the definitions nor the provisions governing the issuance of the two licenses inform those persons who must determine the effect of the statutes on their occupations of the dichotomy urged by the department.

The best indicator of legislative intent is the language of the enacted law. See McGuire v. City of Dallas, 170 S.W.2d 722 (Tex. Comm'n App. 1943, opinion adopted); City of Nassau Bay v. Winograd, 582 S.W.2d 505, 508 (Tex. Civ. App. - Houston [1st Dist.] 1979, writ ref'd n.r.e.). The relevant provisions of the Parks and Wildlife Code may not describe the activities in which holders of general commercial fisherman's licenses may engage in the way the department would prefer, but we do not believe they are indefinite or misleading.  Accordingly, we conclude that the

captain and paid members of the crew of a boat licensed as a commercial shrimp boat are not required to obtain commercial finfish fisherman's licenses in addition to the general commercial fisherman's license required by section 77.040 of the Parks and Wildlife Code in order to sell finfish species that otherwise are lawful to sell.[3]

## S U M M A R Y

The captain and paid members of the crew of a boat licensed as a commercial shrimp boat are not required to obtain commercial finfish fisherman's licenses in addition to the general commercial fisherman's license required by section 77.040 of the Parks and Wildlife Code in order to sell finfish species that otherwise are lawful to sell.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Steve Aragon
Assistant Attorney General

---

3. It might be argued that our conclusion here renders the commercial finfish fisherman's license wholly redundant, since the only license any individual would need is the general commercial fisherman's license. We acknowledge this prospect, but add that the result is compelled by the plain language of the Parks and Wildlife Code and is beyond our authority to correct.